**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-21-0000618**
**04-FEB-2025**
**07:55 AM**
**Dkt. 164 SO**

NO. CAAP-21-0000618

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MEGAN THOMPSON, Petitioner-Appellee-Cross-Appellant,
v.
MICHAEL THOMPSON, Respondent-Appellant-Cross-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(CASE NO. 5DA191000083)

### SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Guidry, JJ.)

**Michael** Thompson appeals, and **Megan** Thompson cross-appeals, from several orders of the Family Court of the Fifth Circuit.[1]  Michael challenges the family court's two-year **Order for Protection** and order awarding him $0 in attorneys fees incurred to quash Megan's subpoenas duces tecum.  Megan challenges the Order For Protection's expiration date, order denying her motion to supplement her petition for protection, and order granting Michael's request for attorneys fees.  We reverse the September 29, 2021 "Order for Protection."  We affirm the November 29, 2019 "Order Following Hearing on Petitioner's September 13, 2019 Motion for Leave to Supplement the Petition for an Order for Protection Filed on April 11, 2019."  We reverse the October 29, 2021 "Order and Judgment in Favor of Respondent

---

[1]    The Honorable Edmund D. Acoba presided.

Michael Thompson and Against Petitioner Megan Thompson for Attorney's Fees."

### Background

Megan petitioned for an order for protection against Michael on April 11, 2019. A temporary restraining order (**TRO**) was issued that day, with a hearing set for April 24, 2019. Michael was served on April 13, 2019, but did not appear at the hearing. An order for protection was entered on April 24, 2019, effective for 10 years. We take judicial notice[2] that Megan filed for divorce on May 8, 2019, and a divorce decree was entered on November 27, 2023. Thompson v. Thompson, Judiciary Information Management System (**JIMS**) Case No. 5DV191000080, at 1, 410 (Haw. Fam. Ct. Nov. 27, 2023).

Michael moved to set aside the order for protection on July 8, 2019. The motion was heard on September 11, 2019. The family court granted Michael's motion and scheduled an evidentiary hearing on Megan's petition. Megan moved to supplement her petition on September 13, 2019. She claimed that Michael had "engaged in multiple acts of harassment" between the issuance of the TRO and the hearing on his motion to set aside. The family court denied Megan's motion.

Megan filed a second petition for order for protection on October 4, 2019. Thompson v. Thompson, JIMS Case No. 5DA191000239, at 1 (Haw. Fam. Ct. Oct. 4, 2019). Megan's petitions were consolidated for hearing only, and were heard over several days between December 18, 2019 and September 29, 2021, primarily due to the COVID-19 pandemic. The TRO remained in effect during that period. The Order for Protection was entered in this case on September 29, 2021. It was effective for two

---

[2] See Hawaii Rules of Evidence Rule 201.

years, until September 28, 2023.[3]  The family court dismissed Megan's second petition as moot because it was granting the petition in this case.[4]  The family court entered findings of fact and conclusions of law on December 27, 2021, consistent with Hawaiʻi Family Court Rules (**HFCR**) Rule 52.

### Discussion

**(1)**  Michael and Megan both challenge the Order for Protection.

> [T]he family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion.  Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006).

**(a)**  Michael contends the family court erroneously found and concluded that the Order for Protection was necessary to prevent domestic abuse or a recurrence of abuse.  Relevant to this case, Hawaii Revised Statutes (**HRS**) § 586-1 (2018) defined "domestic abuse" as "[p]hysical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault, extreme psychological abuse or malicious property damage between family or household members[.]"

The family court found that on April 10, 2019 (the day before Megan filed her petition), Michael and Megan were married but separated.  Megan returned to their home that morning.  She and Michael argued about who should be at the home.  Michael "became physical" with Megan while both were in the house standing by the door.  Megan "defended herself" by gripping

---

[3]     Michael's appeal from the Order for Protection is moot, but we conclude that the *collateral consequences* exception to the mootness doctrine applies.  See Hamilton ex rel. Lethem v. Lethem, 119 Hawaiʻi 1, 8, 193 P.3d 839, 846 (2008).

[4]     Megan has not appealed from the dismissal of her second petition.

Michael's testicles "to make him let go." These unchallenged findings are binding on appeal. Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai'i 450, 459, 40 P.3d 73, 82 (2002).

Michael challenges finding of fact (**FOF**) nos. 8, 9, 11, and 13. We review findings of fact under the *clearly erroneous* standard. Est. of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007). An FOF is clearly erroneous when the record lacks substantial evidence to support the finding. Id. "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id.

The family court found that after Megan gripped Michael's testicles:

> 8.     When [Michael] went to the ground, he got on his back and kicked [Megan]'s abdomen with his foot.
>
> 9.     Officer Asuncion on responding to the incident recognized redness to [Megan]'s Abdomen in the general shape and size of a foot, he witnessed dirt on [Megan]'s shirt in a particular pattern over that portion of the abdomen, and he subsequently matched that pattern to the shoe [Michael] was wearing.

These FOFs are supported by the testimony of Ross **Ruiz** and Kaua'i Police Department officer Gilbert **Asuncion**, and by photographs of Megan taken by Officer Asuncion. The family court found Michael's testimony to the contrary not credible. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher, 111 Hawai'i at 46, 137 P.3d at 360.

The parties do not dispute that Michael then "came into possession" of Megan's phone without her permission, put the phone into the toilet bowl, and "sat on the toilet in an effort to deprive" Megan of her phone. The family court found:

> 11.     [Michael] ran towards the bedroom with [Megan]'s phone, he pivoted and held his arm out in such a way that she was unable to stop and was hit in the chest by [Michael].

4

. . . .

13.    During [Megan]'s attempt to retrieve her phone,
[Michael] shoved her against jealousies [sic] in the
bathroom window breaking them and leaving visible marks on
[Megan]'s back.

These FOFs are supported by Megan's testimony ("He was
pushing me towards the window."), testimony by Ruiz and Officer
Asuncion, and photographs of Megan, the toilet's proximity to the
bathroom window, and the broken jalousies.

Michael also challenges FOF no. 2, which is actually a
mixed FOF and conclusion of law (**COL**), and COL nos. 4, 5, and 12,
which are also mixed findings and conclusions.  We review a mixed
finding of fact and conclusion law under the *clearly erroneous*
standard because the court's ruling depends on the facts and
circumstances of the case.  Klink, 113 Hawaiʻi at 351, 152 P.3d
at 523.  A ruling supported by the trial court's findings and
applying the correct rule of law will not be overturned.  Id.

The family court found and concluded:

2.     A protective order is necessary to prevent
domestic abuse or a recurrent [sic] of abuse, and is
necessary for a period of 2 years, which is a reasonable
amount of time.

. . . .

4.     [Michael] has failed to show cause why the
Temporary Restraining Order should not be continued.

5.     [Megan] has met her burden of proof by a
preponderance of the credible and reliable evidence, and she
is entitled to a Protective Order pursuant to Hawaii Revised
Statutes § 586-5.5.

. . . .

12.    The Protective Order is necessary to prevent
domestic abuse or a recurrent [sic] of abuse, and is
necessary for a period of 2 years, which is a reasonable
amount of time.

HRS § 586-5.5 (Supp. 2021) provides, in relevant part:

(a)    If, after hearing all relevant evidence, the court
finds that the respondent has failed to show cause why the
[temporary restraining] order should not be continued and
that a protective order is necessary to prevent domestic
abuse or a recurrence of abuse, the court may order that a

protective order be issued for a further fixed reasonable period as the court deems appropriate[.]

Michael argues the evidence was insufficient to show that domestic abuse, or a recurrence, had to be prevented. He cites Schack v. Kassebeer, No. CAAP-17-0000353, 2018 WL 2441563 (Haw. App. May 31, 2018) (SDO), and Peck v. Kuiper, No. CAAP-11-0000806, 2013 WL 966956 (Haw. App. Mar. 12, 2013) (SDO). In Schack "[t]here was no evidence of any abuse prior to or after the incident" and there was "no evidence in the record, and no reasonable inferences could be drawn from the evidence, to support a conclusion that the incident was anything other than an isolated event." 2018 WL 2441563, at *1, *2.

In Peck "[t]he Family Court stated that there may have been an incident of domestic abuse, but that it did not feel that a protective order was necessary to prevent further domestic abuse." 2013 WL 966956, at *1. We held:

> Due to the lack of a finding of a prior history of domestic abuse and a finding that Kuiper's apparent abuse of Peck was an isolated incident that occurred after the accusations by Peck, this court cannot say the Family Court abused its discretion by finding insufficient evidence to support a conclusion that a protective order was necessary to prevent domestic abuse or a recurrence of abuse.

Id.

Michael contrasts Schack and Peck with MD v. PR, No. CAAP-19-0000085, 2020 WL 888336 (Haw. App. Feb. 24, 2020) (SDO), where we held:

> [T]he evidence supports the Family Court's findings that there were two instances of domestic abuse. Moreover, although there was testimony that the parties were living separately, there was also testimony that they were living only five houses apart. Additionally, Husband and Wife have a child together. Consequently, they were likely to interact with each other and, given the apparent tension between them, there was the potential for a recurrence of abuse. Thus, there was substantial evidence to support the Family Court's determination that domestic abuse was not an isolated event between the parties and a protective order was necessary to prevent a recurrence of abuse.

2020 WL 888336, at *5.

6

Here, the family court did not make a finding that there had been domestic abuse before April 10, 2019. When it announced its decision it stated: "I want to focus mainly on the incident that occurred on April 10, 2019 because it seems as though a lot of evidence was focused on that incident[.]" FOF no. 3 (which Megan challenges) stated, "[t]he thrust of the evidence in relation to the Request for the Protective Order related to a particular incident that occurred on April 10, 2019."

The family court did not find that the April 10, 2019 incident was an isolated event. Megan presented evidence that Michael also abused her on April 22, 2018, and December 16, 2018. The family court ruled that evidence sufficient to establish prima facie abuse, and denied Michael's motion to dismiss. Michael's counsel responded: "So there are three incidents that will need to be responded to by [Michael], the April 22nd, '18 incident. . . . The December 6 [sic], 2018 incident and the April 10, 2019 incident; is that correct?"

The family court stated, "Yes."

Megan's answering brief details the conflicting evidence she and Michael presented at trial about the April 22, 2018 and December 16, 2018 incidents. Michael's reply brief does not dispute Megan's description or argue additional evidence.

The family court did not mention the April 22, 2018 or December 16, 2018 incidents when it announced its decision. Its FOFs did not mention either incident.

HRS § 586-5 addresses the problem of domestic abuse by providing protection for an abused family or household member through the issuance of a restraining order. The legislature enacted HRS Chapter 586 in 1982 "to streamline the procedures for obtaining and issuing ex parte temporary restraining orders to prevent acts of or the recurrence of domestic abuse." Hse. Conf. Comm. Rep. No. 1, in 1982 House Journal, at 815; see also Hse. Stand. Comm. Rep. No. 592, in 1982 House Journal, at 1165; Sen. Conf. Comm. Rep. No. 4, in 1982 Senate Journal, at 873. The Senate Standing Committee Report found that a restraining order serves "to cool violent relationships that have been developing for a number of years" and that giving the court "the discretion to extend protective orders" provides "greater flexibility in

trying to calm the emotionally charged nature of such situations." Sen. Stand. Comm. Rep. No. 643, in 1982 Senate Journal, at 1222. Thus, the purpose of the restraining order is to "prevent [] acts of abuse, or a recurrence of actual domestic abuse, and assur[e] a period of separation of the parties involved." HRS § 586-4 [(1993)].

Coyle v. Compton, 85 Hawai'i 197, 204-05, 940 P.2d 404, 411-12 (App. 1997).

When it announced its decision the family court stated:

Now, as a result of this scuffle that occurred in the home, both parties received minor injuries. . . .

. . . .

. . . [T]he Court also is taking judicial notice that a divorce action was filed in Thompson v Thompson, the Court finds -- and also that attorneys are involved in the divorce action and that -- and I agree with [Megan's counsel], there's no reason for [Michael] to have any contact with [Megan] other than through his attorney to negotiate the terms and conditions of the divorce action. . . .

This case is not an unusual case because, as many divorce cases, especially when parties initially separate, there's hostile feelings and there's always questions about who should live in the home, how money should be spent, division of property, and at that time there's no Court orders in place so there's a lot of conflict, and hopefully this can be resolved all through the divorce action and the parties can go their separate ways and not have any contact with each other.

The family court found, and the parties do not dispute:

15. No evidence was admitted of any continuing harassing behavior that occurred subsequent to the filing of [Megan's second petition].

The family court found and concluded:

10. As no evidence was admitted as to violations of the protective order subsequent to the filing of [Megan's second petition] there is no fear that there will be further contact subsequent to the finalization of the divorce case.

Megan's cross-appeal challenges COL no. 10. But the record shows she has no children with Michael, and her opening brief cites to no evidence in the record tending to show she feared further contact with Michael after their impending divorce.

This case is more like <u>Schack</u> and <u>Peck</u> than <u>MD v. PR</u>. Here, the family court made no findings of multiple incidents of abuse. The family court did not find what happened on April 10, 2019 to be an isolated incident; but it characterized the event as a "scuffle" in which Megan and Michael both received "minor injuries." The family court's mixed finding and conclusion that the Order for Protection was "necessary to prevent domestic abuse or a [recurrence] of abuse" was not supported by findings of fact, and was contrary to the findings that there was no reason for Michael to have contact with Megan except through their respective divorce attorneys, and "there is no fear that there will be further contact subsequent to the finalization of the divorce case." Under these circumstances, we conclude the family court acted outside of its discretion by entering the Order for Protection.

**(b)** Megan contends the Order for Protection should have been issued for 10 years instead of two. We need not address this issue because we've concluded that the family court erred by entering the Order for Protection.

**(2)** Megan challenges the family court's order denying her motion to supplement her petition under HFCR Rule 15(d). Megan's motion was supported by her declaration describing things she said Michael did after he was served with the Order for Protection. During the September 20, 2019 hearing the family court stated that the new allegations concerned events after the TRO was issued, so that Megan wouldn't be barred by res judicata from filing a new petition based on those events. Megan's counsel stated, "if it's the Court's finding that my client will not be prejudice because the Court recognizes she could file a separate TRO, I would concede there's no prejudice to her." The family court denied the motion to supplement. Megan filed her second petition two weeks later. The cases were consolidated for evidentiary hearing. Under these circumstances, the family court acted within its discretion by denying Megan's motion to supplement.

**(3)** On June 2, 2020, Michael moved to quash subpoenas duces tecum Megan served on Avis Budget Group, Inc. and Venmo. The family court granted the motion and Michael's request for attorneys fees, and directed counsel to submit an affidavit of fees. Counsel submitted an affidavit on September 7, 2021, requesting $2,499.98 in fees. The family court entered an order on October 29, 2021. It awarded Michael $0 in attorney fees.

Megan does not challenge the family court's decision to quash her subpoenas, but challenges the family court granting Michael's request for attorneys fees.

Michael challenges the family court awarding him $0 in attorneys fees.

Michael moved to quash subpoenas Megan had issued on April 30, 2020 — after the November 4, 2019 discovery deadline, and after the evidentiary hearing began (on December 18, 2019). Michael argued the subpoenas were unreasonable and oppressive, and requested an award of attorneys fees. Megan opposed the motion and also requested an award of attorneys fees. But Megan now argues the family court had no legal basis to award fees.

The family court's order didn't state the authority for the fee award, as required by Kaina v. Gellman, 119 Hawaiʻi 324, 331, 197 P.3d 776, 783 (App. 2008). Michael argues the family court had inherent power to award fees under HRS § 571-8.5(a)(10), citing Enos v. Pacific Transfer & Warehouse, Inc., 79 Hawaiʻi 452, 457, 903 P.2d 1273, 1278 (1995). But the family court didn't make "a specific finding of bad faith." Kaina, 119 Hawaiʻi at 331, 197 P.3d at 783. The record does not show "clear evidence that the challenged actions [were] entirely without color, and [were] taken for reasons of harassment or delay or for other improper purposes[.]" Enos, 79 Hawaiʻi at 458, 903 P.2d at 1279. The transcript of the August 5, 2020 hearing on Michael's motion does not show "a high degree of specificity in the factual findings of the" family court. Id. The family court acted outside of its discretion by assessing Michael's attorneys fees against Megan without stating the authority for the award or

10

making a specific finding of bad faith.  We need not decide whether the $0 award was error.

### **Conclusion**

The September 29, 2021 "Order for Protection" is reversed.  The November 29, 2019 "Order Following Hearing on Petitioner's September 13, 2019 Motion for Leave to Supplement the Petition for an Order for Protection Filed on April 11, 2019" is affirmed.  The October 29, 2021 "Order and Judgment in Favor of Respondent Michael Thompson and Against Petitioner Megan Thompson for Attorney's Fees" is reversed.

DATED: Honolulu, Hawaiʻi, February 4, 2025.

On the briefs:

Charles T. Kleintop,
Lynn K. Kashiwabara,
for Respondent-Appellant-
Cross-Appellee Michael
Thompson.

Dyan K. Mitsuyama,
Paula S. Nakata,
for Petitioner-Appellee-
Cross-Appellant Megan
Thompson.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge